[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants, the town of Manchester and five municipal firemen, move for summary judgment in this professional negligence and indemnification action brought by Sharon Bolivar, individually, and as next friend of her minor son, Zakariya Tageldin. The bases for this motion are that the Good Samaritan statute, General Statutes § 52-557b (b) cloaks these firemen with immunity and that the plaintiffs failed to meet the time standards for notice and commencement of suit as set forth in General Statutes § 7-308.
Summary judgment shall be rendered if the pleadings and documents submitted with respect to the motion and opposition thereto disclose no genuine dispute as to material facts and that the movant is entitled to judgment as a matter of law. Practice Book § 1749.
A review of the pleadings and documents submitted indicates that there exists no genuine dispute that on February 1, 1997, the minor plaintiff resided with his mother at 127 Cooper Hill Road in Manchester and experienced cardiac arrest as a complication of a respiratory ailment. His mother summoned emergency assistance from the Manchester Fire Department. Deputy Chief MacDonald and town firemen Andrew D'Appollonio, John Keenig, Christian Frezza, and Donald Farquhar responded to the emergency call. All five individuals were at the time fulltime, paid firefighters employed by the municipality. D'Appollonio, Koenig, Frezza, and Farquhar were also trained and licensed emergency medical technicians. CT Page 4992
At the scene, these medical technicians attempted to insert an endotracheal tube into Tageldin's airway to facilitate his respiration. At oral argument, plaintiffs' counsel clarified that no claim is made attacking the necessity for or the decision by the defendants to attempt this intubation. The plaintiffs do claim that the manner in which the procedure was performed was negligent and caused the tube to be inserted and lodged in Tageldin's esophagus, rather than his respiratory tract, resulting in serious injuries to him and medical expenses for his mother.
The plaintiffs sue the firemen for professional negligence, and the town of Manchester under the indemnification provision of General Statutes § 7-465.
 GOOD SAMARITAN IMMUNITY
In 1963, Connecticut passed the original version of § 52-557b, the Good Samaritan law, which conferred immunity from liability for ordinary negligence upon doctors who acted "voluntarily and gratuitously" to provide emergency medical care for those in need "other than in the ordinary course of such [doctor's] employment or practice." P.A. 63-205. Later amendments expanded the statute to confer immunity upon registered nurses, practical nurses, and dentists. Other amendments brought under the umbrella of immunity members of professions or occupations outside of the medical field, such as policemen, firemen, lifeguards, teachers, ski patrol, ambulance personnel and certain railroad personnel, if these persons completed various first aid courses. The nonmedical professionals were given a more expansive immunity, however, in that they receive the benefit of the statute despite being paid to respond to such emergencies as part of their employment. Presently, the Good Samaritan statute is organized by having subsection (a) address the medical professionals, who must still act voluntarily, gratuitously, and outside of their practice to and acquire immunity, and having subsections (b) through (f) address those nonmedical field personnel who are afforded immunity despite being paid to respond to the emergency.
The source of the legal dispute on the immunity issue is P.A. 77-349, which expanded what is now § 52-557b (a) to include "medical technicians." That is, medical technicians have no immunity under the Good Samaritan statute unless they acted voluntarily, gratuitously, and outside of their employment. Under § 52-557b (b), however, paid firemen, who have completed the requisite first aid course, are immune even though acting within their employment duties when administering first aid. The individual defendants in this case are all firemen who are also emergency medical technicians. CT Page 4993
The defendants contend that, because they are firemen who have completed the required first aid course, they are immune from suit by the plaintiffs for the negligent acts alleged in the complaint by virtue of § 52-557b (b). The plaintiffs argue that § 52-557b (b) is inapplicable because the defendants were acting as paid emergency medical technicians within their employment and fall outside of the Good Samaritan law by virtue of § 52-557b (a). The plaintiffs also argue that § 52-557 (b) b is inapplicable because the defendants rendered medical care beyond "first aid" in attempting to intubate Tageldin and, therefore, cannot claim immunity under that subsection which only applies to the rendering of first aid. Because the court feels that the contours of the plaintiffs' first argument is dispositive of this issue, the court leaves for another day the question of what constitutes "first aid."
It is undisputed that the four defendants who tried to intubate the minor plaintiff were administering emergency medical care as part of their employment as paid firefighters. The fact that they were firefighters does not alter their status as medical technicians. The reorganization of § 52-557b as described above occurred in P.A. 82-160. The dichotomy between subsection (a) and the remaining subsections appears to be based on the amount of medical training the caregiver has. Those with greater medical training, such as doctors, nurses, dentists and medical technicians, only have immunity when acting gratuitously and outside of their regular vocation under § 52-557b
(a). Firemen with less training, having passed a first aid course, have immunity despite being paid to respond to emergencies pursuant to §52-557b (b). It appears to the court that it is the level of medical training and expertise attendant to being an emergency medical technician and not the label, fireman, which controls.
Accordingly, the court holds that it is § 52-557b (a) which applies to the four emergency medical technicians in this case. Because they were acting within the course of their paid employment, no immunity from suit is available to them under our Good Samaritan law.
 SECTION 7-308 NONCOMPLIANCE
Next, the defendants claim that the plaintiffs failed to notify them individually of the intent to commence suit within six months of the alleged injury and negligence, and to commence the suit within one year of that event as required by § 7-308 and, therefore, the plaintiffs are barred from maintaining this suit. The plaintiffs respond that §7-308 is inapplicable because the defendants acted outside of the statutorily defined activity of "fire duties, " and, in any event, the failure to comply with the time strictures of § 7-308 only bars suit against the municipality for indemnification, and not against the fireman CT Page 4994 individually.
It is undisputed that the plaintiffs brought this action on February 3, 1999, about two years after the alleged occurrence. As mentioned above, § 7-308 requires suit to begin within one year. Consequently, if § 7-308 applies, this action is prohibited as untimely. Also, the supporting affidavits disclose that it is undisputed that none of the firemen were given notice of the action within the six month period mandated by § 7-308. This action would be barred by that delinquency also.
Subsection 7-308 (a) states, in pertinent part, that
 "[e]ach municipality . . . shall pay on behalf of any paid . . . fireman . . . all sums which such fireman . . . becomes obligated to pay by reason of liability imposed upon such fireman . . . by law for damages to person . . . if the fireman . . . at the time of the occurrence, accident, injury or damages complained of, was performing fire . . . duties . . .
That subsection goes on,
 "[n]o action for personal injuries . . . shall be maintained unless such action is commenced within one year after the cause of action therefor has arisen nor unless notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk or corresponding officer of such municipality and with the fireman within six months after such cause of action has accrued."
 A.
Turning to the plaintiffs' first contention that § 7-308 is inapplicable because the defendants' attempts to intubate the minor plaintiff fall outside of the statutory definition of "fire duties, " § 7-308 (a) specifies that "fire duties" are "those duties the performance of which is defined in [C.G.S. § 7-314]." Section 7-314
defines "fire duties" as comprising, inter alia, "duties performed . . . while answering or returning from fire department emergency call." At oral argument, the defendants acknowledged that this is the only activity which they assert covers the situation at hand.
The plaintiffs insist that "answering or returning" describes merely CT Page 4995 the traveling to and from the scene of the emergency and excludes any activity rendering medical care at the site of the emergency. The court rejects this constricted interpretation. The Merriman Webster Collegiate Dictionary, 10th edition, lists under the meaning of the word "answer" the following: "to act in response to"; "to offer a solution for"; and notes that the word "implies the satisfying of a question, demand, call, or need."
While the phrase "answering an emergency call" clearly embraces travel to the distress site, it also includes the attempts to mollify or alleviate the emergency at the scene and to prepare to transport the person in distress to a place where necessary help is available. The court construes the phrase "fire duties" as used in § 7-314, and derivatively in § 7-308, to include the actions of the defendants in trying to restore respiration to Tageldin at his home. It is conceded that the individual defendants were firemen working for the Manchester Fire Department which had received the emergency call from Bolivar requesting emergency medical assistance for her son.
 B.
Next, the plaintiffs contend that even if the time standards of §7-308 were applicable and were breached, that deficiency would only bar suit against the municipality for indemnification and would have no impact on the suit as against the firemen individually. The plaintiffs urge this conclusion by analogy to the case law regarding § 7-465
which creates municipal indemnification liability arising from the liability of municipal employees in general. Under § 7-465 "liability of the municipality, but not that of the municipal employee is dependent upon the giving of proper statutory notice." Fraser v. Henninger,173 Conn. 52, 56 (1977). A plaintiff may maintain a common law action against the municipal employee "thereby avoiding those requirements which are unique to recovery under the indemnification statute [§ 7-465]." Id.
While §§ 7-465 and 7-308 have similarities, especially in that both create municipal liability by way of indemnification of claims against municipal employees in general and firemen, respectively, the plaintiffs ignore the discrepancies and dissimilar language between these two statutes. Section 7-465 states that:
 [n]o action for personal physical injuries . . . shall be maintained against the municipality and employee jointly unless such action is commenced within two years after the cause of action therefor arose nor unless written notice of the intention to CT Page 4996 commence such action . . . has been filed with the clerk of such municipality within six months after such cause of action has accrued." (emphasis added).
In contrast, § 7-308 omits the word "jointly" and instead reads:
 [n]o action . . . shall be prosecuted or maintained against the municipality fireman unless at least thirty days have elapsed since the demand, claim or claims upon which such action . . . is founded were presented to the clerk . . . of such municipality. No action for personal injuries . . . shall be maintained against such municipality and employee unless such action is commenced within one year . . . nor unless notice of the intention to commence such action . . . has been filed with the clerk . . . of such municipality and with the fireman within six months after such cause of action accrued." (emphasis added).
Section 7-465 lacks any requirement to notify the municipal employee, which requirement is expressly mandated by § 7-308.
Also, § 7-308, unlike § 7-465, is more than merely an indemnification statute. Section 7-308 also contains provisions which clearly have nothing to do with municipal liability or indemnification. Immediately following the language just cited, § 7-308 continues "[n]o action for trespass shall lie against any fireman crossing or working upon lands of another to extinguish fire or for investigation thereof." This statute not only creates municipal indemnification liability but also circumscribes the liability of firemen in general. As a result, the case law interpreting § 7-465 so as t6 apply only to municipal liability is inapposite because § 7-308 serves a broader purpose than indemnification.
Because the plaintiffs began this action more than one year after the alleged cause of action accrued and failed to give notice to the individual firemen as mandated by § 7-308, the defendants are entitled to judgment as a matter of law. Summary judgment is granted as to all defendants.
 /s/ SFERRAZZA ___________________ J.
CT Page 4997